UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

CLARA MELANCON                         CIVIL ACTION NO. 6:11-cv-01389

VERSUS                                 JUDGE DOHERTY

MICHAEL J. ASTRUE,                     MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED.

## BACKGROUND

The claimant, Clara Melancon, was born on June 21, 1949.[1]  On February 25,

2009, at the age of 59, she applied for disability insurance benefits, alleging a

disability onset date of December 31, 2008.[2]  She has a high school education[3] and

---

[1]      Rec. Doc. 7-1 at 41, 108.

[2]      Rec. Doc. 7-1 at 108.

[3]      Rec. Doc. 7-1 at 42.

worked for thirty-six years as an insurance agent.[4]   She claims that she stopped working because of neck and low back pain that affects her left arm, left leg, and head and interferes with her ability to concentrate over an eight-hour workday.[5]   She also claims that she stopped working because of anxiety.[6]   A determination was made that she is not disabled.[7]   Mrs. Melancon requested a hearing,[8] which was held on March 15, 2010 before Administrative Law Judge ("ALJ") Joan H. Deans.[9]   An unfavorable ruling was issued on April 30, 2010.[10]   Thereafter, Mrs. Melancon submitted her physician's medical source statement[11] to the Appeals Council.[12]   On June 27, 2011, the Appeals Council denied her request for review,[13] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  This appeal followed.

---

[4]      Rec. Doc. 7-1 at 43.

[5]      Rec. Doc. 7-1 at 44-45.

[6]      Rec. Doc. 7-1 at 49.

[7]      Rec. Doc. 7-1 at 71-75.

[8]      Rec. Doc. 7-1 at 80.

[9]      Rec. Doc. 7-1 at 37-70.

[10]     Rec. Doc. 7-1 at 24-30.

[11]     Rec. Doc. 7-1 at 213-214.

[12]     Rec. Doc. 7-1 at 10.

[13]     Rec. Doc. 7-1 at 4-6.

## ASSIGNMENT OF ERRORS

Mrs. Melancon contends that the ALJ failed to provide specific reasons for finding that Mrs. Melancon's statements regarding her alleged functional capacity and disability are not credible.  In particular, Mrs. Melancon argues that the ALJ erred in failing to consider Mrs. Melancon's thirty-six years of work experience when assessing her credibility.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[14]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[15]  Substantial evidence is more than a mere scintilla and less than a preponderance.[16]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[17]  Finding substantial evidence requires

---

[14]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[15]     *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995).

[16]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[17]     *Boyd v. Apfel,* 239 F.3d at 704.

scrutiny of the entire record as a whole.[18]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[19]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[20]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[21]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[22]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

---

[18]    *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[19]    *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[20]    *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[21]    42 U.S.C. § 423(d)(1)(A).

[22]    20 C.F.R. § 404.1572(a)-(b).

-4-

At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[23]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[24] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[25]  The claimant's residual functional capacity is used at the fourth

---

[23]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[24]     20 C.F.R. § 404.1520(a)(4).

[25]     20 C.F.R. § 404.1545(a)(1).

step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[26]

The claimant bears the burden of proof on the first four steps.[27]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[28]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[29]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[30]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[31]

---

[26]     20 C.F.R. § 404.1520(e).

[27]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]     *Fraga v. Bowen*, 810 F.2d at 1304.

[30]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[31]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

In this case, the ALJ found, at step one, that Mrs. Melancon did not engage in substantial gainful activity after her alleged disability onset date of December 31, 2008.[32]  That finding is supported by evidence in the record.

At step two, the ALJ found that Mrs. Melancon has the following severe impairments:  disorders of the spine.[33]  This is also supported by evidence in the record.  The ALJ did not include Mrs. Melancon's alleged anxiety in the list of severe impairments, implicitly finding that her anxiety is not a severe impairment.  Mrs. Melancon does not contend that the ALJ erred in failing to find that her anxiety is a severe impairment.

At step three, the ALJ found that Mrs. Melancon does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[34]  Mrs. Melancon does not contend that this finding was erroneous.

The ALJ then found that Mrs. Melancon retains the residual functional capacity to perform the full range of light duty work as defined in 20 C.F.R. § 404.1567(b).[35]  The ALJ then proceeded to step four, where she found that Mrs. Melancon is capable

---

[32]     Rec. Doc. 7-1 at 26.

[33]     Rec. Doc. 7-1 at 26.

[34]     Rec. Doc. 7-1 at 27.

[35]     Rec. Doc. 7-1 at 27.

of performing her past work as a sales agent.[36]  Accordingly, the ALJ did not proceed to step five.  The ALJ found that Mrs. Melancon has not been disabled from December 31, 2008 through the date of the decision.[37]

Mrs. Melancon argues that the ALJ's decision is erroneous because the ALJ failed to properly evaluate her credibility concerning her back condition's effect on her functional capacity.  Mrs. Melancon claims that she stopped working on December 31, 2008 due to neck and low back pain that affected her left arm and left leg and interfered with her ability to concentrate on her work for a full day.  The medical evidence in the record demonstrates that Mrs. Melancon does have problems with her back.  On October 1, 2008, she underwent MRIs of the cervical spine, thoracic spine, and lumbar spine.  These tests showed degenerative disc disease at C5-6 with broad-based disc impression and bilateral moderate foraminal stenosis,[38] degenerative disc disease at C6-7 with disc bulging and mild foraminal narrowing,[39] multilevel degenerative changes to the thoracic spine with disc bulging but without

---

[36]     Rec. Doc. 7-1 at 30.

[37]     Rec. Doc. 7-3 at 30.

[38]     Rec. Doc. 7-1 at 155.

[39]     Rec. Doc. 7-1 at 156.

evidence of canal stenosis,[40] and multilevel mild degenerative changes to the lumbar spine without evidence of canal or foraminal stenosis or disc herniation.[41]

On December 1, 2008, Mrs. Melancon was evaluated by a physical therapist at Our Lady of Lourdes Regional Medical Center in Lafayette, Louisiana.[42]  Although she was prescribed physical therapy two to three times per week for four weeks, the record documents only four visits to the physical therapist.  Despite the records from the physical therapist indicating that the therapy afforded pain relief,[43] Mrs. Melancon testified at the hearing that she found physical therapy ineffective.[44]

The record indicates that Mrs. Melancon saw a chiropractor on January 21, 2009[45] and again on April 29, 2009.[46]  She testified at the hearing that she was, at that time, seeing a chiropractor every three to four weeks and obtaining some pain relief.[47]

---

[40]     Rec. Doc. 7-1 at 158.

[41]     Rec. Doc. 7-1 at 157.

[42]     Rec. Doc. 7-1 at 160-167.

[43]     Rec. Doc. 7-1 at 161.

[44]     Rec. Doc. 7-1 at 45.

[45]     Rec. Doc. 7-1 at 177-180.

[46]     Rec. Doc. 7-1 at 175-176.

[47]     Rec. Doc. 7-1 at 46.

On April 18, 2009, Mrs. Melancon was examined by Dr. Bruce Torrance at the request of Louisiana Disability Determination Services.[48]  Mrs. Melancon reported to Dr. Torrance that she was having pain on the left side from the neck to her lower back with weakness and pain in her arms and legs.  She rated the pain at a level of 8/10 on a daily basis that increased to 10/10 with exertion.  She also reported numbness to the left arm and leg.  She had not seen a neurosurgeon or orthopedic back surgeon, but she had undergone physical therapy that provided minimal relief. She told Dr. Torrance that "the pain and discomfort as well as occasional numbness causes her difficulty with working especially when she is sitting on the desk working on the computer all day long."  She also told him that the pain in her back, left leg, and left arm prevent her from working.

Dr. Torrance's examination found mild tenderness to palpation the entire length of Mrs. Melancon's spine but a normal gait, 5/5 grip strength in both hands, and a normal range of motion in all extremities including the cervical spine and lumbar spine.  Mrs. Melancon was able to bend down and touch her toes without difficulty.  She was able to lay straight back on the table.  She could stand on tip toes, squat, and stand on her heels without difficulty.

---

[48]      Rec. Doc. 7-1 at 169-172.

Dr. Torrance's impression was that Mrs. Melancon exhibits mild limitations in the ability to stand, lift, carry, walk, exert herself, and sit for a prolonged length of time due to degenerative disc disease.  He advised her to continue physical therapy and to consult a neurosurgeon or orthopedic surgeon.

On November 16, 2009, Mrs. Melancon was examined by a second consulting physician, Dr. Stephen M. Wilson.[49]  Dr. Wilson found that Mrs. Melancon had no swelling, inflammation, or muscle spasm in her lower back or legs.  There was tenderness to palpation across the low back area.  She had pain and unsteadiness with heel-and-toe walking and some pain in the low back when flexing forward 60 degrees.  Examination of her legs show no muscle atrophy, no muscle weakness, no muscle spasm, no gross joint deformity, no numbness.  Patellar and Achilles reflexes were present and equal bilaterally, she had good strength on dorsiflexion of the feet and toes bilaterally, pulses were palpable and equal bilaterally, and straight leg raising was negative bilaterally.  X-rays showed minimal degenerative changes at L4-5 and L5-S1.  Based on her records, he noted that she has spondylosis and facet arthritis in both the neck and the back to a minimal degree.

Dr. Wilson found "no objective reasons to make me think that this patient cannot return to the workplace."  He would, however, limit her to lifting no more than

---

[49]     Rec. Doc. 7-1 at 198-205.

30 pounds and no more than 10 pounds regularly, and to only occasionally engaging in bending, stooping, crawling, and climbing.

Dr. Stephen Salopek is Mrs. Melancon's treating physician.  The record includes his records from June, September, and December 2009[50] and a medical source statement dated May 27, 2010.[51]  Dr. Salopek's notes are largely illegible, and the record contains no evidence of Dr. Salopek having treated Mrs. Melancon before she stopped working.  On June 15, 2009, Dr. Salopek prescribed Mobic for Mrs. Melancon's neck pain but noted that she had a full range of motion in her neck.  He also checked the box indicating that her neck was normal.  On December 21, 2009, Dr. Salopek saw Mrs. Melancon with regard to complaints of pain in her shoulders and neck while standing.  Again, however, he noted that her neck was normal.  There are no legible notes in his records regarding Mrs. Melancon's spine disorder.

After the hearing, Dr. Salopek provided a medical source statement with his assessment of her ability to perform work-related activities.  Mrs. Melancon does not argue that the Commissioner's decision is erroneous because the Appeals Council failed to reverse the ALJ's decision following receipt of Dr. Salopek's medical source statement.  In the statement, Dr. Salopek indicated that Mrs. Melancon can sit for only

---

[50]      Rec. Doc. 7-1 at 195-196, 207-211.

[51]      Rec. Doc. 7-1 at 213-214.

about thirty to forty-five minutes without interruption and can stand or walk for only about fifteen to thirty minutes at a time.  It is his opinion that she can only sit for three hours out of an eight-hour work day and can only stand or walk for the same amount. He noted that she should never lift or carry any amount of weight, needs hourly breaks of ten minutes at a time because of pain, would need to miss work or leave early at least three times per month, and would experience drowsiness because of medication.  He also indicated that she is limited in fingering with her right hand and is limited with reaching, handling, feeling, and fingering with her left hand or arm. Dr. Salopek's conclusions are different from those of the consulting physicians, and they are also inconsistent with his treatment notes and with Mrs. Melancon's hearing testimony.

At the hearing, Mrs. Melancon explained that she is right-handed, and she denied having any trouble with her right hand.[52]  She stated that her left hand gets weak and she drops things; consequently, she tries not to use that hand.[53]  She explained that her work at the insurance agency involved being in the office working on the phone, on the computer, filing, and pulling files that weighed five pounds or

---

[52]     Rec. Doc. 7-1 at 42.

[53]     Rec. Doc. 7-1 at 42-43.

less.[54]  She testified that "I'd get real bad back pains down my leg, down my arm, my neck, going all the way up my neck.  It would get so bad like I couldn't concentrate. You know, concentration was hard because of the pressure going to the head and to the back."[55]  She denied that physical therapy was helpful,[56] but was treating with a chiropractor every three to four weeks, which provided pain relief.[57]  She estimated that she can carry about five pounds and can sit for about forty-five minutes to an hour before needing to stand up.[58]  She stated that, while working, she would perform all of her work all day but would have to lay down when she got home.[59]  She also stated that she would have stayed on the job until retirement age if she had been able to do so but her body was telling her that working was not good.[60]  Critically, she testified that, through her final day on the job, she was able to perform all necessary work tasks.  "I would push myself to the end of the day. . . .  the work had to get

---

[54]     Rec. Doc. 7-1 at 44.

[55]     Rec. Doc. 7-1 at 45.

[56]     Rec. Doc. 7-1 at 45.

[57]     Rec. Doc. 7-1 at 45-46.

[58]     Rec. Doc. 7-1 at 53.

[59]     Rec. Doc. 7-1 at 59.

[60]     Rec. Doc. 7-1 at 60.

done."[61]   In a disability report that appears to be contemporaneous with Mrs. Melancon's application for Social Security benefits, Mrs. Melancon stated that she stopped working on December 31, 2008 and "worked full time and performed all job duties until then."[62]   There is no evidence that Mrs. Melancon's spinal disorder worsened after she stopped working.  To the contrary, there is evidence that physical therapy and chiropractic care obtained after she stopped working lessened her pain. The ability to work with a pre-existing condition is evidence that the condition is not disabling.[63]

Mrs. Melancon's primary complaint is pain.  Pain can limit the range of jobs a claimant can perform, but there should be clinical or laboratory diagnostic studies showing the existence of a medical impairment which could reasonably be expected to produce the amount of pain alleged.[64]   In this case, Mrs. Melancon does have a severe condition that can cause pain.  But pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[65]   Mild or moderate

---

[61]      Rec. Doc. 7-1 at 59.

[62]      Rec. Doc. 7-1 at 126.

[63]      See, e.g., *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Brown*, 810 F.2d 1296, 1305 n. 11 (5th Cir. 1987).

[64]      *Selders v. Sullivan*, 914 F.2d at 618.

[65]      *Selders v. Sullivan*, 914 F.2d at 618-19.

-15-

pain is not disabling, and Mrs. Melancon does not contend that the ALJ erred in failing to find that her pain in and of itself is disabling.

Instead, she argues that the ALJ failed to properly evaluate her credibility concerning her alleged functional limitations and, in particular, argues that the ALJ failed to assess her credibility in light of her thirty-six year work history. "Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity."[66]   In this case, the ALJ found that Mrs. Melancon's spine disorder could reasonably be expected to produce her alleged symptoms.  Consequently, the ALJ was required to evaluate the  intensity, persistence, and limiting effects of her symptoms.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."[67]  The regulations state:  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

---

[66]      *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).

[67]      SSR 96-7p, *1.

-16-

weight."[68]  Mrs. Melancon argues that the ALJ failed to provide specific reasons why her subjective complaints were not found credible.

The Fifth Circuit has held that although an ALJ "is bound . . . to explain his reasons for rejecting a claimant's complaints of pain," he is not required to "follow formalistic rules in his articulation."[69]   In this case, the ALJ reviewed Mrs. Melancon's testimony concerning her functional limitations.  The ALJ then stated: "Comparing the testimony with the overall evidence, the undersigned is convinced that the claimant's impairments do significantly impact her ability to function, but her allegation of inability to perform all work activity is not supported by the overall evidence."[70]  The ALJ then reviewed the medical evidence in the record.

The ALJ said: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration[,] and limiting effects of these symptoms are not entirely credible."[71]   "The ALJ found the medical evidence more persuasive than the

---

[68]     SSR 96-7p, *4.

[69]     *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

[70]     Rec. Doc. 7-1 at 28.

[71]     Rec. Doc. 7-1 at 29.

claimant's own testimony.  These are precisely the kinds of determinations that the ALJ is best positioned to make."[72]  Based on the information in the record at the time, i.e., without consideration of Dr. Salopek's medical source statement but with consideration of Dr. Salopek's treatment notes, the ALJ found that "both the claimant's treating physicians and the consulting examiner's reports reflect restrictions concurrent with a residual functional capacity of light work."[73]  The lack of physician-imposed restrictions inconsistent with light work rebuts Mrs. Melancon's alleged inability to work.[74]  An ALJ may discount a claimant's subjective complaints when the alleged impairments contradict the medical evidence.[75]

The ALJ's decision does not expressly reference Mrs. Melancon's thirty-six years of work as an insurance agent, and Mrs. Melancon is correct that there is jurisprudence from other circuits holding that a claimant with a good work record is entitled to substantial credibility when claiming that she can no longer work due to a disability.[76]  But even if the ALJ had afforded Mrs. Melancon an extra measure of

---

[72]     *Falco v. Shalala*, 27 F.3d at 164.

[73]     Rec. Doc. 701 at 29.

[74]     *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988).

[75]     *Hernandez v. Astrue*, 278 Fed. App'x 333, 340 (5th Cir. 2008).

[76]     See, e.g., *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983).

credibility because she was a good and faithful employee, the ALJ would remain justified in finding that Mrs. Melancon is not disabled.

Mrs. Melancon testified that she could, at all times up to and including her final day of work on December 31, 2008, perform all of her work duties.  The record contains no evidence that she requested a change in her work duties or work schedule in an effort to reduce her pain.  There is no evidence that she rearranged the chair, computer, telephone, or other items at her workstation to reduce the pain she claimed to be experiencing at work.  The record contains no evidence that she had to take numerous breaks during the day or that she was frequently absent from work.  The record contains no evidence that she had to take pain medication during the work day. Instead, Mrs. Melancon performed all of her work duties every day that she worked through December 31, 2008.  This indicates that Mrs. Melancon was not disabled on or before that date.

In this case, the ALJ was presented with medical evidence that Mrs. Melancon has a spine disorder but the nature and extent of the functional impairment resulting from that disorder, as revealed by the medical testing and as explained by three physicians, was inconsistent with Mrs. Melancon's own subjective evaluation of her functional capacity.  Accordingly, the ALJ's finding regarding Mrs. Melancon's credibility is supported by the evidence in the record.

While the ALJ did not strictly follow the letter of SSR 96-7p in explaining the credibility finding, strict adherence is not mandatory.  Procedural perfection in administrative proceedings is not required, and a judgment will not be vacated unless a party's substantial rights have been affected.[77]  Furthermore, procedural improprieties constitute a basis for remand only when the improprieties cast into doubt the existence of substantial evidence to support the ALJ's decision.[78]

In this case, the ALJ's decision that Mrs. Melancon is capable of performing light work is supported by substantial evidence, and the ALJ's failure to evaluate the credibility of her statements regarding her functional capacity in strict adherence to the letter of the cited regulation was not reversible error.  For that reason, the undersigned recommends that the Commissioner's decision be affirmed.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Mrs. Melancon is not disabled is supported by substantial evidence.  Accordingly,

---

[77]     *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

[78]     *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

-20-

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of June 2012.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE